IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALEXANDER D. JACKSON,<br><br>Defendant. | **8:24-CR-171**<br><br><br>**MEMORANDUM AND ORDER ON THE DEFENDANT'S DENIAL OF THE GOVERNMENT'S NOTICE OF INFORMATION OF PRIOR CONVICTION UNDER 21 U.S.C. § 851** |

Defendant Alexander Jackson is charged with Distribution of 5 grams or more of Methamphetamine (Actual); Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and Possession of a Firearm as a Prohibited Person (Felon). Filing 1 (Indictment). Jackson has pleaded guilty to the distribution charge in Count I of the Indictment and to the felon in possession charge in Count III of the Indictment. *See* Filing 39 (Text Minute Entry). The charge of possession of a firearm in furtherance of a drug trafficking crime in Count II of the Indictment is set for trial on October 7, 2025. The Government has filed a Notice of Information of Prior Conviction pursuant to 21 U.S.C. § 851 (§ 851 Notice) stating that in 2014 Jackson was convicted of manufacturing or distributing base cocaine (crack) in the District Court of Douglas County, Nebraska. Filing 27. The Government argues that Jackson's prior state conviction qualifies as a "serious drug felony" under 21 U.S.C. § 841(b)(1)(B) and therefore subjects him to increased punishment. Filing 27 at 1. In response, Jackson filed the Denial of the Government's Notice of Information of Prior Conviction, Filing 28, now before the Court. For the reasons below, Jackson's Denial is denied, and the Court finds that his prior conviction is for a "serious drug felony" under 21 U.S.C. § 841(b)(1)(B).

1

## I.  INTRODUCTION

### A.  Legal Background and Findings of Fact

Under 21 U.S.C. § 841(b)(1)(B), a defendant with a prior conviction for a serious drug felony

faces an increased statutory range of incarceration. A "serious drug felony" is defined as "an offense

described in section 924(e)(2) of title 18 for which . . . the offender served a term of imprisonment

of more than 12 months" and "the offender's release from any term of imprisonment was within 15

years of the commencement of the instant offense." 21 U.S.C. § 802(58). Section 924(e)(2) of Title

18 defines the term "serious drug offense" as "an offense under State law, involving manufacturing,

distributing, or possessing with intent to manufacture or distribute, a controlled substance (as

defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum

term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). The

definition of a "serious drug felony" for the purposes of a 21 U.S.C. § 851 enhancement is the same

as the definition of a "serious drug offense" under the Armed Career Criminal Act (ACCA). *See* 21

U.S.C. § 802(58); 18 U.S.C. § 924(e).[1]

The Court held an evidentiary hearing on the Government's Information and Jackson's

Denial as required by 21 U.S.C. § 851(c)(1). That statute provides:

> The court shall hold a hearing to determine any issues raised by the response which
> would except the person from increased punishment. . . . The hearing shall be before
> the court without a jury and either party may introduce evidence. . . . [T]he United
> States attorney shall have the burden of proof beyond a reasonable doubt on any issue
> of fact. At the request of either party, the court shall enter findings of fact and
> conclusions of law.

---

[1] While 21 U.S.C. §§ 851 and 841(b)(1)(B) provide for a sentencing enhancement related to the crime charged in
Count I of the Indictment (distribution of 5 grams or more of methamphetamine (actual)), the ACCA provides for a
sentencing enhancement related to the crime charged in Count III of the Indictment (felon in possession of a firearm).
Jackson's Denial presently before the Court only challenges the application of a sentencing enhancement to the crime
charged in Count I. Jackson does not challenge the application of a sentencing enhancement to the crime charged in
Count III. *See* Filing 29 at 2–3 (explaining that "[t]he penalty issue on Count III is not currently before the Court").
Accordingly, the Court does not presently consider whether a sentencing enhancement is appropriate under the ACCA.

21 U.S.C. § 851(c)(1). The statute also states the circumstances in which the parties may appeal determinations of whether the defendant is subject to an increased sentence. 21 U.S.C. § 851(d)(2).

At the evidentiary hearing in this case, the parties stipulated that "base cocaine (crack)" is "cocaine." The Government offered three exhibits, which the Court admitted into evidence: Exhibit 1 is a certified copy of Jackson's 2014 state conviction for manufacturing or distributing base cocaine (crack); Exhibit 2 is a transcript of Jackson's change of plea hearing for the state conviction; and Exhibit 3 is Nebraska Legislative Bill 298 from June 2013. Filing 42.

In light of the parties' stipulation and the evidence admitted during the evidentiary hearing, the Court makes the following findings of fact beyond a reasonable doubt:

1.      In 2014, Jackson was convicted of Manufacturing, Distributing, or Possession with Intent to Distribute Base Cocaine (Crack) in the District Court of Douglas County, Nebraska, case number CR14-1274.

2.      Jackson's prior state conviction documents identify the drug which he was convicted of manufacturing, distributing, or possessing with intent to distribute as base cocaine (crack).

3.      Jackson served a term of imprisonment of more than 12 months related to the prior state conviction, and he was released from any term of imprisonment within 15 years of the commencement of the instant offense.

4.      Base cocaine (crack) is cocaine.

The fourth finding merits some clarification. The Court understands the parties' stipulation to mean—and the Court's finding is—that "base cocaine (crack)" falls within the Nebraska definition of "cocaine." However, this finding does not mean that "base cocaine (crack)" is not a distinct form of "cocaine" under Nebraska law. In other words, under Nebraska law, all base cocaine (crack) is cocaine, but not all cocaine is base cocaine (crack).

## B. The Parties' Arguments

Jackson does not challenge the validity of his 2014 state conviction for manufacturing or distributing base cocaine (crack). Filing 29 at 1. He also concedes that the duration of and his recent release from his term of imprisonment for his 2014 conviction meet the requirements of a "serious drug felony" under 21 U.S.C. § 802(58). Filing 29 at 2–3. Instead, Jackson's challenge to the § 851 Notice is that his "Nebraska cocaine offense fails to categorically qualify as a 'serious drug felony.'" Filing 29 at 3. More specifically, Jackson argued at the hearing and in his brief supporting his Denial that his prior state conviction for an offense involving base cocaine (crack) does not qualify as a serious drug felony under 21 U.S.C. § 841(b)(1)(B) because the prior state conviction did not involve a controlled substance as defined by the Controlled Substances Act. Filing 29 at 3. Jackson compared the definition of cocaine under Nebraska state law at the time of his state offense to the definition of cocaine in the federal Controlled Substances Act at the same time. Filing 29 at 5–7. Jackson argues that under the "categorical approach," the Nebraska definition was categorically broader than the federal definition. Filing 29 at 6. Specifically, he asserts that federal law excluded from the definition of cocaine "coca leaves and extracts of coca leaves from which . . . derivatives of ecgonine . . . have been removed" while Nebraska law only excluded from the definition of cocaine "decocainized coca leaves or extractions which do not contain cocaine or ecgonine." Filing 29 at 6–7. Jackson argues that because the Nebraska definition of cocaine did not explicitly exclude coca leaves and extracts of coca leaves from which *derivatives* of ecgonine have been removed while the federal definition of cocaine did explicitly exclude that substance, Nebraska law criminalized more conduct than federal law. Filing 29 at 6.

In contrast, the Government contended that "under the 'modified categorical approach,' the Court can look to court documents from the prior conviction to see that [Jackson's prior] conviction involved base cocaine (crack), not cocoa leaves that contained derivatives of ecgonine." Filing 36

4

at 3; *see also* Filing 36 at 4 (arguing that under the modified categorical approach, "the Court can determine that Defendant's 2014 prior conviction involved base cocaine (crack), not cocoa leaves that contained derivatives of ecgonine."). At the hearing, the Government asked the Court to follow the Eighth Circuit's analysis in *United States v. Oliver*, 987 F.3d 794 (8th Cir. 2021), but reach the opposite outcome. *See also* Filing 36 at 5. The Government argued that in *Oliver* the court applied a modified categorical approach but could not determine the specific controlled substance involved in the prior state conviction, while in this case, Exhibits 1, 2, and 3 clearly show that Jackson's prior state conviction involved base cocaine (crack). Filing 36 at 5. According to the Government, Jackson's 2014 conviction is thus "a valid prior conviction." Filing 36 at 6. Following the evidentiary hearing, the Government submitted a Supplemental Response to the Defendant's Objection in which the Government acknowledges that it "is still unable to find a case directly on point." Filing 43 at 1. However, the Government emphasizes that Jackson's prior conviction "involves Nebraska's statute and charging documents [that] identify the drug as 'base cocaine (crack).'" Filing 43 at 1.

## II. LEGAL ANALYSIS

Having considered the evidence and the parties' arguments, the Court concludes that Jackson's 2014 state conviction for manufacturing or distributing base cocaine (crack) does qualify as a "serious drug felony" under 21 U.S.C. § 841(b)(1)(B). This conclusion follows in large part from the Court's conclusion on the appropriate approach to determining whether a state conviction is a predicate "serious drug felony" under the federal statute, which is an issue on which the parties differ.

### A. The Analytical Approaches

As this Court has already explained, a serious drug felony under 21 U.S.C. § 841(b)(1)(B) is defined as a serious drug offense under the ACCA. *See* 21 U.S.C. § 802(58); 18 U.S.C.

§ 924(e)(2). Thus, the Eighth Circuit's analysis of the serious drug felony enhancement under § 851 has relied on and mirrored its analysis of the serious drug offense enhancement under the ACCA. *See, e.g.*, *Oliver*, 987 F.3d at 806. The first issue the Court must address is what analytical approaches courts use to determine whether a state offense is a serious drug offense.

### 1. The "Categorical" Approach

The Eighth Circuit Court of Appeals has stated, "To determine whether a prior conviction qualifies as a predicate offense for purposes of a federal sentencing enhancement, [courts] apply a categorical approach that looks to the statutory definition of the prior offense, not to the facts underlying a defendant's prior convictions." *Oliver*, 987 F.3d at 806 (cleaned up). Courts then "compare [the statutory definition of the prior state offense] to the federal definition at issue." *United States v. Buckley*, 146 F.4th 679, 681 (8th Cir. 2025). "When '[u]sing the categorical approach, [courts] focus solely on whether the elements of the crime of conviction sufficiently match the conduct of a serious drug [felony].'" *Oliver*, 987 F.3d at 806 (quoting *United States v. Vanoy*, 957 F.3d 865, 867 (8th Cir. 2020)). "If the state offense sweeps more broadly, or punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense." *Buckley*, 146 F.4th at 681 (internal quotation marks omitted) (quoting *United States v. Heard*, 62 F.4th 1109, 1112 (8th Cir. 2023)). Indeed, the Eighth Circuit has repeatedly held that "a [state] drug statute that criminalizes even one additional isomer does not qualify as a 'serious drug felony.'" *United States v. Owen*, 51 F.4th 292, 296 (8th Cir. 2022) (per curiam) (citing *Oliver*, 987 F.3d at 806–07); *see also Heard*, 62 F.4th at 1112 (quoting *Owen*). For example, in *Oliver*, the Eighth Circuit held that an Illinois drug statute was overbroad because it covered optical, positional, and geometric isomers of cocaine while the federal law only covered optical and geometric isomers. 987 F.3d at 807.

The Supreme Court recently reiterated that determining whether a prior state drug offense qualifies as a "serious drug offense" under the ACCA considers whether the definitions of the

offense under state and federal law are "a categorical match" in *Brown v. United States*, 602 U.S. 101, 106–7 (2024). This is so, even though the Supreme Court's focus in *Brown* was on a question of timing: "whether a state crime constitutes a 'serious drug offense' if it involved a drug that was on the federal schedules when the defendant possessed or trafficked in it but was later removed." *Id.* at 106. The Supreme Court concluded that a state drug conviction counts as a predicate offense under the ACCA if the state conviction "involved a drug on the federal schedules at the time of that offense." *Id.* at 123. The *Brown* court emphasized that its conclusion did not abandon the categorical approach. *Id.* at 114, n.5 (explaining that the court has not "depart[ed] from the categorical approach"). Even more recently, the Eighth Circuit reaffirmed that the categorical approach applies when a court is considering whether a prior state offense is a serious drug offense for the purposes of the ACCA enhancement. *Buckley*, 146 F.4th at 681.

Thus, the Court concludes that the categorical approach is the default approach to determining whether Jackson's prior Nebraska conviction qualifies as a conviction for a serious drug felony.

### 2. The "Modified Categorical" Approach

The categorical approach is not the only approach, however. In certain circumstances, courts must apply a "modified categorical approach." *United States v. Coleman*, 977 F.3d 666, 669 (8th Cir. 2020).

#### a. The Steps in the Analysis

Unlike the categorical approach, which looks only "to the statutory definition of the prior offense, not to the facts underlying a defendant's prior convictions," *Oliver*, 987 F.3d at 806 (cleaned up), the modified categorical approach allows a court to consider "'certain approved documents' [that] may 'determine which statutory phrase was the basis for the conviction.'" *Coleman*, 977 F.3d at 669 (quoting *Vanoy*, 957 F.3d at 867). To put it another way, the modified categorical approach

7

"involves peeking at certain documents to identify what crime, with what elements, a defendant was convicted of." *Owen*, 51 F.4th at 294 (internal quotation marks and citations omitted). The limited class of documents the court may "peek" at—known as *Shepard* documents—include "the indictment, jury instructions, or plea agreement and colloquy." *Mathis v. United States*, 579 U.S. 500, 505 (2016) (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)); *Owen*, 51 F.4th at 294–95. After "peeking" at appropriate documents, a court then determines whether the crime the defendant was convicted of "reaches more conduct than the federal definition (or the generic offense)." *Owen*, 51 F.4th at 295; *Maldonado*, 864 F.3d at 898 ("The court can then compare that crime, as the categorical approach [also] commands, with the relevant generic offense." (quoting *Mathis*, 579 U.S. at 506)). In making that comparison, a court must "limit [its] analysis to the statutory language related to the particular offense[ ], and [it] ask[s] whether a defendant may be convicted of [that] offense[ ] for conduct that does not fit within" the federal definition of a serious drug felony. *Maldonado*, 864 F.3d at 899.

### b.  The "Divisible" Statute "Trigger"

The "trigger" for application of the modified categorical approach is a "divisible" statute. *Coleman*, 977 F.3d at 669. The Eighth Circuit has explained that "[b]y listing alternative elements, some statutes create multiple offenses," *i.e.*, they are "divisible." *Id.* There may be more than one way in which a statute may be divisible. The Eighth Circuit has explained that a statute is divisible based on the definition of the conduct element, for example, when "an individual may violate [the statute] by manufacturing, *or* delivering, *or* selling, *or* possessing with the intent to manufacture/deliver/sell a controlled substance." *Coleman*, 977 F.3d at 669 (citing Tenn. Code § 39-17-417(a) (2003)) (emphasis in the original).

The Eighth Circuit has also explained that a statute is divisible based on the controlled substance type, for example, when the statute's "structure shows that different drug types and

8

quantities have different punishments." *Oliver*, 987 F.3d at 807 (internal quotation marks and citation omitted) (analyzing 720 Ill. Comp. Stat. 570/401 (2005)); *see also United States v. Myers*, 56 F.4th 595, 598 n.6 (8th Cir. 2022) (explaining that Mo. Rev. Stat. § 195.211 (2000) "was divisible by controlled substance"). The state statute at issue in *Oliver* in part makes it unlawful for a person "knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled or counterfeit substance or controlled substance analog," then sets out different punishments for different quantities of different controlled substances such as heroin, cocaine, morphine, etc. 720 Ill. Comp. Stat. 570/401 (2005).

The Eighth Circuit has also contemplated the possibility—although apparently never held— that a state statute may be divisible by drug form, for example, because cocaine has more than one isomer. *Owen*, 51 F.4th at 296 n.3. In *Owen*, the Eighth Circuit considered the possibility that Minnesota's third-degree drug-sale statute might be "divisible by cocaine isomer," then looked to see if the *Shepard* documents mentioned the specific "form of [cocaine] that [the defendant] sold." *Id.* However, the court found that those documents "mention[ed] only cocaine, not the form of it that Owen sold." *Id.*

This Court will identify these three kinds of divisibility as "divisible by conduct," "divisible by drug type," and "divisible by drug form," respectively.

### B.  The Modified Categorical Approach Is Triggered Here

Jackson argues that the statute of conviction is broader than the federal definition of a serious drug felony because the Nebraska definition of cocaine—the generic controlled substance involved in Jackson's prior conviction—is categorically broader than the federal definition of cocaine. In contrast, the Government argues that the Court can look at underlying court documents from Jackson's state conviction—*i.e.*, use a modified categorical approach—and plainly see that Jackson's conviction involved base cocaine (crack), even though the Nebraska definition of cocaine

9

is broader than the federal definition. As mentioned above, which approach applies turns on whether the Nebraska statute is divisible. *Coleman*, 977 F.3d at 669.

At the time Jackson committed the state offense, Neb. Rev. Stat. § 28-416(1)(a) made it "unlawful for any person knowingly or intentionally . . . [t]o manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance." Neb. Rev. Stat. § 28-416(1)(a) (2013); *see Buckley*, 146 F.4th at 681 (explaining that courts look to the state and federal statutes in effect at the time the defendant committed the state offense); *accord Brown*, 602 U.S. at 123 (concluding that a state drug conviction counts as a predicate offense under the ACCA if the state conviction "involved a drug on the federal schedules at the time of that offense."). The Government points out that the Eighth Circuit has determined that Neb. Rev. Stat. § 28-416(1) is divisible with respect to the statute's conduct elements:

> As a preliminary matter, we note that [§ 28-416(1)] list[s] offenses in the alternative, such as "manufacture, distribute, deliver, dispense, or possess with intent," Neb. Rev. Stat. § 28-416(1), and that [this] statute separately defines these offenses elsewhere, *see* Neb. Rev. Stat. § 28-401(8), (9), (12), (14). Because these portions of the statute "list elements in the alternative, and thereby define multiple crimes," these portions are divisible. *See Mathis*, 136 S.Ct. at 2249[.]

*Maldonado*, 864 F.3d at 898; *see also Coleman*, 977 F.3d at 669 (explaining that Tenn. Code § 39-17-417(a) (2003) was divisible because "an individual may violate [the statute] by manufacturing, *or* delivering, *or* selling, *or* possessing with the intent to manufacture/deliver/sell a controlled substance" (emphasis in the original)).

The Government argues that this Court should now find that the statute is also divisible with respect to the type of controlled substance involved because different controlled substances result in different penalties under the statute. This argument requires further examination of § 28-416 and statutory provisions that it references.

First, § 28-416(2)(a) provides:

> (2) Except as provided in subsections (4), (5), (7), (8), (9), and (10) of this section, any person who violates subsection (1) of this section with respect to: (a) A controlled substance classified in Schedule I, II, or III of section 28-405 which is an exceptionally hazardous drug shall be guilty of a Class II felony[.]

Neb. Rev. Stat. § 28-416(2)(a) (2013). At the time, § 28-401 defined "exceptionally hazardous drug" as including "a narcotic drug." Neb. Rev. Stat. § 28-401(28) (2013). A "narcotic drug" at the time was defined to mean among other things "(b) a compound, manufacture, salt, derivative, or preparation of opium, coca leaves, or opiates." Neb. Rev. Stat. § 28-401(15)(b). This definition clearly embraces cocaine and base cocaine (crack), as they are derived from coca leaves.

Section 28-405 in turn set forth the schedules of controlled substances. *See generally* Neb. Rev. Stat. § 28-405 (2013). This provision identifies numerous types of controlled substances. Schedule II alone has subparts (a) through (f) listing different controlled substances. Neb. Rev. Stat. § 28-405, Schedule II. This makes a violation of § 28-416(1)(a), which could involve any Schedule II controlled substance that is an "exceptionally hazardous drug," a statute divisible by drug type. *Oliver*, 987 F.3d at 807 (explaining that a statute is divisible based on the controlled substance element, for example, when the statute's "structure shows that different drug types and quantities have different punishments." (internal quotation marks and citation omitted) (analyzing 720 Ill. Comp. Stat. 570/401 (2005))).

In 2014, Nebraska's drug schedules did not define base cocaine (crack), but they did provide a general definition for cocaine. Neb. Rev. Stat. § 28-405, Schedule II(a)(4) (2013). Specifically, that general definition is as follows:

> (4) Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent to or identical with any of these substances, including cocaine or ecgonine and its salts, optical isomers, and salts of optical isomers, except that the substances shall not include decocainized coca leaves or extractions which do not contain cocaine or ecgonine[.]

Neb. Rev. Stat. § 28-405, Schedule II(a)(4). Again, "base cocaine (crack)" would fall within this broad definition, but that does not mean that "base cocaine (crack)" is not a distinct form of "cocaine."

In support of its contention that the relevant statute is divisible—and divisible in the way this Court has identified as "divisible by drug form"—the Government several times pointed to subsection (8) of Neb. Rev. Stat. § 28-416. Subsection (8) of § 28-416 specifically identifies crimes involving one form of cocaine, specifically, "base cocaine (crack)," and imposes different punishments based on quantity:

> (8) Any person who violates subsection (1) of this section with respect to base cocaine (crack) or any mixture or substance containing a detectable amount of base cocaine in a quantity of:
>
> (a) One hundred forty grams or more shall be guilty of a Class IB felony;
>
> (b) At least twenty-eight grams but less than one hundred forty grams shall be guilty of a class IC felony; or
>
> (c) At least ten grams but less than twenty-eight grams shall be guilty of a Class ID felony.

Neb. Rev. Stat. § 28-416(8) (2013). The Government admitted at the hearing that Jackson was not convicted under subsection (8), but that is beside the point.

Subsection (8) is a penalty provision for violations of subsection (1) that involve "base cocaine (crack)" in specified quantities, identifying them as Class IB, Class IC, and Class ID felonies. Neb. Rev. Stat. § 28-416(8)(a)–(c). The specified quantities are 140 grams "or more"; "at least" 28 grams "but less than" 140 grams; and "at least" 10 grams "but less than" 28 grams, respectively. *Id.* Although the Government did not mention it, subsection (7) of § 28-416 is a penalty provision for violations of subsection (1) that involve other forms of "cocaine" in specified quantities, also identifying them as Class IB, Class IC, and Class ID felonies, for 140 grams "or more"; "at least" 28 grams "but less than" 140 grams; and "at least" 28 grams, respectively. Neb.

12

Rev. Stat. § 28-416(7).[2] The existence of separate penalty provisions for "base cocaine (crack)" and

"cocaine" reinforces the Court's conclusion that "base cocaine (crack)" and "cocaine" are separate

forms of "cocaine" under the Nebraska statute. In exactly the same way, subsection (2)(a) of § 28-

416 is a penalty provision for violations of subsection (1) but for an unspecified quantity of any of

several controlled substances that are exceptionally hazardous drugs, identifying them as Class II

felonies. Neb. Rev. Stat. § 28-416(2)(a). Indeed, Neb. Rev. Stat. § 28-416(2)(a) (2013) expressly

excepts from its application cocaine and base cocaine (crack) in the quantities specified in

subsections (7) and (8), respectively. *See* Neb. Rev. Stat. § 28-416(2)(a) (2013) (imposing Class II

felony penalties "[e]xcept as provided in subsections (4), (5), (7), (8), (9), and (10) of this section"

for any person who violates subsection (1)).

In short, § 28-416 is divisible as to "conduct," *see Coleman*, 977 F.3d at 669, "drug type,"

*see Oliver*, 987 F.3d at 807, and "drug form," *see Owen*, 51 F.4th at 296 n.3. Therefore, a "modified

categorical approach" is "triggered."

### C.  The Prior Conviction Is a "Serious Drug Felony"

Because the Nebraska statute is divisible and has "triggered" a modified categorical

approach, the Court turns to what the *Shepard* documents show about the specific statutory basis

for the prior offense. *See Owen*, 51 F.4th at 295 (explaining that the modified categorical approach

---

[2] Subsection (7) of § 28-416 provides as follows:

> (7) Any person who violates subsection (1) of this section with respect to cocaine or any mixture or substance containing a detectable amount of cocaine in a quantity of:
>
> (a) One hundred forty grams or more shall be guilty of a Class IB felony;
>
> (b) At least twenty-eight grams but less than one hundred forty grams shall be guilty of a Class IC felony; or
>
> (c) At least ten grams but less than twenty-eight grams shall be guilty of a Class ID felony.

Neb. Rev. Stat. § 28-416(7). Other subsections of this statute specify penalties for certain controlled substances in specified quantities. *See* Neb. Rev. Stat. § 28-416(10) (heroin), (11)–(13) (marijuana).

allows the court to "peek" at certain documents to determine whether the crime of conviction reaches

more conduct than the federal definition); *Coleman*, 977 F.3d at 669 (explaining that the modified

categorical approach allows the court to consider "certain approved documents" to "determine

which statutory phrase was the basis for the conviction" (citation omitted)); *accord Mathis*, 579 U.S.

505 (explaining that such documents are identified in *Shepard*, 544 U.S. at 26).

    *1. Illustrative Cases*

    Two Eighth Circuit decisions cited by the parties are instructive. In *Owen*, the defendant was

twice convicted of selling "cocaine" in Minnesota. 51 F.4th at 294. In a *per curiam* opinion, the

Eighth Circuit stated that the defendant's prior state conviction "w[ould] not count" as a predicate

offense, "regardless of whether the statute is divisible." 51 F.4th at 295 (stating more specifically,

"We assume without deciding that [Minnesota's drug offense statute is divisible based on the type

of drug] because the answer will be the same either way. If Minnesota's definitions of '[n]arcotic

drug' and 'cocaine,' Minn. Stat. § 152.01, subd. 3a, 10, include drugs that the federal controlled-

substance schedules do not, *see* 18 U.SC. § 924(e)(2)(A), Owen's convictions will not count under

ACCA regardless of whether the statute is divisible."). The Eighth Circuit assumed without deciding

that the Minnesota statute "is divisible based on the type of drug." 51 F.4th at 295. As to whether

the statute "criminalize[d] a broader swath of conduct" than the generic offense or federal definition,

the Eighth Circuit found that both the Minnesota statute that Owen violated and the federal definition

of listed drugs included "cocaine." *Id.* However, the Eighth Circuit explained,

> Cocaine has multiple isomers. *See* 1 Gerald F. Uelmen & Alex Kreit, Drug Abuse and the Law Sourcebook § 5:23 (2022). The problem for the government is that federal law criminalizes just two: optical and geometric isomers. 21 U.S.C. §§ 802(14), 812, sched. II(a)(4); 21 C.F.R. § 1308.02. Minnesota's statute, by contrast, bans them all.

*Owen*, 51 F.4th at 295–96. The *Shepard* documents showed only that Owen was convicted of an

offense involving "cocaine," and the Minnesota definition of "cocaine" was overbroad. *Id.* at 295

n.3. Consequently, in the circumstances of that case, Owen's conviction did not "count," even if the statute was divisible, where the state statutory definition of "cocaine" was overbroad, and the *Shepard* documents did not identify the drug involved in Owen's conviction any more specifically than "cocaine." *See Maldonado*, 864 F.3d at 899 (explaining that in making the required comparison, a court must "limit [its] analysis to the [state's] statutory language related to the particular offense[ ], and [it] ask[s] whether a defendant may be convicted of [that] offense[ ] for conduct that does not fit within" the federal definition of a serious drug felony).

In *Owen*, the Eighth Circuit also considered whether the Minnesota statute was divisible by drug form. *Id*. at 296 n.3. The Eighth Circuit explained,

> Even if the third-degree drug-sale statute is divisible by cocaine isomer, it would make no difference here because the *Shepard* documents mention only cocaine, not the form of it that Owen sold. *See Shepard v. United States*, 544 U.S. 13, 20–21, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (listing the types of documents that a court can consider).

*Owen*, 51 F.4th at 296 n.3. Thus, where the *Shepard* documents that the Eighth Circuit considered when using a modified categorical approach did not demonstrate that the conviction involved a type or form of cocaine covered by the federal definition, "Owen's third-degree drug-sale convictions d[id] not count as 'serious drug offense[s]' under ACCA." *Id*. at 296.

The Eighth Circuit made a similar observation in *Oliver*. The court explained that even though the Illinois statute of conviction was divisible, if the defendant's prior state conviction "involved cocaine, it would not qualify as a serious drug felony" because "Illinois's definition of cocaine is categorically broader than the federal definition." *Oliver,* 987 F.3d at 807 (internal quotation marks and citation omitted)). More specifically, the Eighth Circuit had "no difficulty concluding that 720 Ill. Comp. Stat. 570/401 is divisible, as its 'structure shows that different drug types and quantities have different punishments.'" *Id.* (quoting *Vanoy*, 957 F.3d at 868). However,

15

considering the *Shepard* documents, the Eighth Circuit observed that "neither the type of drug nor

the specific subsection of the statute is identified in the Certified Statement." *Id.* More specifically,

> We know that Illinois's definition of cocaine is "categorically broader than the federal definition." *[United States v.] Ruth*, 966 F.3d [642,] 645-47 (7th Cir. 2020). If Oliver's 2006 conviction involved cocaine, it would not qualify as a serious drug felony. But the Certified Statement is silent on the specific controlled substance, making it impossible to know whether Oliver's 2006 conviction involved a controlled substance that is listed on the federal controlled substances schedules. *See* 18 U.S.C. § 924(e)(2)(A)(ii).

*Oliver*, 987 F.3d at 807. The Eighth Circuit concluded that because the government failed to prove

beyond a reasonable doubt that the prior conviction qualified as a "serious drug felony"—because

the *Shepard* documents did not clarify the specific type of controlled substance involved under a

divisible statute—the enhanced sentence under 21 U.S.C. § 841(b)(1)(A) did not apply. *Id.* at 807–

08. Thus, the statute at issue in *Oliver* was divisible by drug type, but the modified categorical

approach was uninformative as to the part of the divisible statute under which the defendant was

convicted.

    2.    *This Case Involves the Information Lacking in the Illustrative Cases*

Jackson's case is different from *Owen* and *Oliver*. This Court did not assume but specifically

determined above that the Nebraska statute is divisible "by drug type" and "by drug form."

Critically, unlike the situation in *Owen* and *Oliver*, the application of the modified categorical

approach to Jackson's prior conviction is illuminating. The certified copy of Jackson's prior

conviction, Exhibit 1, and the transcript of his change of plea hearing for the state conviction,

Exhibit 2, make clear that Jackson was convicted of violating Neb. Rev. Stat. § 28-416(1)(a) and

(2)(a). Specifically, the *Shepard* documents show that Jackson's charged offense involved "Base

Cocaine (Crack), in the amount of less than 10 grams." Exhibit 1 at 2. Therefore, it did not fall

within the penalties listed for a violation of § 28-416(1)(a) involving larger quantities of either "base

cocaine (crack)" in § 28-416(8) or "cocaine" in § 28-416(7), but it did fall within the penalty listed

16

for an offense involving an unspecified quantity of any controlled substance (here, "base cocaine

(crack)") that was "an exceptionally hazardous drug" in § 28-416(1)(a) and (2)(a). *See* Exhibit 1 at

2–3 (charging two sales of "Base Cocaine (Crack), in the amount of less than 10 grams in violation

of Neb. Rev. Stat. § 28-416(1)(a) & (2)(a), a Class II Felony"); Exhibit 2 at 4 (showing that Jackson

pleaded guilty to Count 2).

Thus, the *Shepard* documents reveal that Jackson was convicted of an offense involving

"base cocaine (crack)," a specific form of "cocaine."

3. *The Conduct in the Prior Conviction Fits Within the Federal Definition of a Serious Drug Felony*

Next, "[l]imit[ing] [the Court's] analysis to the [state's] statutory language related to the

particular offense[ ]," the Court "ask[s] whether a defendant may be convicted of [that] offense[ ]

for conduct that does not fit within" the federal definition of a serious drug felony. *See Maldonado,*

*864 F.3d at 899*. The Court concludes that Jackson was convicted of an offense that does fit within

the federal definition of a "serious drug felony."

Again, 18 U.S.C. § 924(e)(2) defines the term "serious drug offense" as "an offense under

State law, involving manufacturing, distributing, or possessing with intent to manufacture or

distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21

U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by

law." 18 U.S.C. § 924(e)(2)(A)(ii). Section 802 defines "controlled substance" to mean a drug or

other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this

subchapter." 21 U.S.C. § 802(6) (also stating exceptions not applicable here). Schedule II of the

Controlled Substances Act, like the Nebraska statute, defines only "cocaine," not "base cocaine

(crack)," or "cocaine base." 21 U.S.C. § 812, Schedule II(a)(4).

17

The Court agrees with Jackson that federal law excludes from the definition of cocaine "coca leaves and extracts of coca leaves from which . . . derivatives of ecgonine . . . have been removed," 21 U.S.C. § 812, Schedule II(a)(4), while Nebraska law only excludes from the definition of cocaine "decocainized coca leaves or extractions which do not contain cocaine or ecgonine," Neb. Rev. Stat. § 28-405, Schedule II(a)(4). Filing 29 at 6–7. The Court also agrees with Jackson that because the Nebraska definition of "cocaine" did not explicitly exclude coca leaves and extracts of coca leaves from which *derivatives* of ecgonine have been removed while the federal definition of cocaine did explicitly exclude that substance, Nebraska law criminalized more conduct than federal law. Filing 29 at 6. That is not the end of the matter, however.

The fact that the state and federal statutes define only "cocaine" does not mean that the Court compares only the definitions of "cocaine" in the two acts. If that were the case, the modified categorical approach would never apply to any offense involving only a specific form of cocaine, such as a specific isomer or "base cocaine (crack)." The decision in *Owen* shows that is not so: *Owen* shows that the modified categorical approach applies when a specific form of cocaine was involved in the prior state offense because it shows that the defendant's prior state offense might have "counted" if the *Shepard* documents had revealed the specific isomer of cocaine involved in that prior state offense. *See Owen*, 51 F.4th at 296 n.3.

Rather, because the question under the modified categorical approach is whether the conduct the defendant was previously convicted of fits within the definition of a serious drug offense, the Court looks at whether the specific form of cocaine involved in the prior offense fits within the federal definition of "cocaine." As the Court observed above, all "base cocaine (crack)" (or for that matter all "crack" or "cocaine base") is "cocaine," but not all "cocaine" under either the state or federal definition is "base cocaine (crack)" (or "crack" or "cocaine base"). Even if the state

18

definition of "cocaine" is broader than the federal definition of "cocaine," the Court concludes that

the question under the modified categorical approach is whether the state definition is broader in a

way that applies to Jackson's previous conviction for a § 28-416(1)(a) offense involving "base

cocaine (crack)." *See Maldonado*, 864 F.3d at 899 (looking at the "particular offense" to determine

whether the conduct fits within the federal definition of a serious drug felony).

Under federal law, § 841(b)(1)(B) imposes penalties for different amounts of cocaine (500

grams or more) and cocaine base (28 grams or more), which demonstrates that "cocaine base" is a

form of "cocaine." The Supreme Court explained,

> We agree with the Government that the most natural reading of the term "cocaine
> base" [in § 841(b)(1)] is "cocaine in its base form"—*i.e.*, $C_{17}H_{21}NO_4$, the molecule
> found in crack cocaine, freebase, and coca paste. On its plain terms, then, "cocaine
> base" reaches more broadly than just crack cocaine.

*DePierre v. United States*, 564 U.S. 70, 79 (2011). This decision demonstrates that the federal

definition of "cocaine base," a specific form of "cocaine" within the meaning of § 812, Schedule

II(a)(4), is broader than the definition of "base cocaine (crack)," the form of "cocaine" involved in

Jackson's prior state offense. In other words, this is a case in which "[l]imit[ing] [the Court's]

analysis to the [state's] statutory language related to the particular offense[ ]," the Court finds that

Jackson was not "convicted of [the state] offense[ ] for conduct that does not fit within" the federal

definition of a serious drug felony. *See Maldonado*, 864 F.3d at 899. Rather, Jackson was convicted

of a state offense that does fit within the federal definition because the definition of the form of

"cocaine" involved in Jackson's prior state offense ("base cocaine (crack)") was not broader but

narrower than and within the federal definition of "cocaine."

Jackson's prior conviction thus qualifies as a prior conviction for a "serious drug felony"

within the meaning of 21 U.S.C. § 841(b)(1)(B) and 18 U.S.C. § 924(e)(2)(A)(ii).

### III. CONCLUSION

For the foregoing reasons, the defendant's Denial must be denied, and the Government's Notice of Information of Prior Conviction must be sustained. Accordingly,

IT IS ORDERED that

1.      Jackson's Denial of the Government's Notice of Information of Prior Conviction under 21 U.S.C. § 851, Filing 28, is denied; and

2.      The Government's Notice of Information of Prior Conviction under 21 U.S.C. § 851, Filing 27, is sustained; and

3.      Jackson's prior conviction under Neb. Rev. Stat. § 28-416(1)(a) for an offense involving "base cocaine (crack)" is a "serious drug offense" under 21 U.S.C. § 841(b)(1)(B).

Dated this 18th day of September, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge

20